**RIVER QUEEN COAL COMPANY, Inc.,**
**Appellant,**

**v.**

**Anton MENCER et al., Appellees.**

Court of Appeals of Kentucky.

May 22, 1964.

Jarvis & Cornette, Greenville, for appellant.

W. D. Bratcher, Greenville, for appellees.

MILLIKEN, Chief Justice.

This appeal is from a verdict and judgment awarding appellees, Anton Mencer and his wife Rena, $5,000 for damage to their home allegedly caused by the blasting operations of appellant, River Queen Coal Company, Inc., which strip mined coal in the area.

Before considering the contentions of the appellant, we shall summarize the circumstances which gave rise to the action. Since 1950 the appellees, the Mencers, have lived in a concrete block home which they built and own. Appellant, River Queen, is engaged in the strip mining of coal, an activity which requires the use of explosives to fragmentize the overburden of rock and soil in order to expose the coal. The appellees and their witnesses testified that after appellant began these operations in 1958, the house was often severely shaken and they observed cracks which became progressively worse. At no time did appellant set off explosives at a distance of less than one and one-half miles from appellees' home. Seismologists who testified on behalf of appellant stated that under the circumstances existing in this case, it was a physical impossibility for appellees' house to have been damaged by either vibrations or concussions emanating from the charges set off by River Queen.

Mencer, his wife and his son testified to feeling the vibrations from the blasting, hearing the dishes and windows rattle, and to the physical damage to the house which immediately ensued. Neighbors, who lived a comparable distance from the blasting corroborated their testimony as to the vibrations from the blasting and one stated the Mencer home had been in good condition before the blasting. Furthermore, it was admitted that Mencer notified River Queen's superintendent by writing and by telephone calls several months before the present suit was filed that the blasting was damaging his home, but River Queen did not change its blasting procedure. It did assign an employee to ascertain the cause of the damage to the Mencer home and was informed by the employee that the damage was caused by settling of the house. The settling theory was contradicted by a contractor who testified for the Mencers and

opined that settlement was not the cause of the damage. It also was pointed out that when the Duncan Coal Company operated in the area no damage was done by its blasting.

We conclude that there was enough evidence to take the Mencers' case to the jury despite River Queen's abundant expert testimony that the Mencer home was too far away to be affected by the blasting. Although the experts' testimony in the case at bar is strong, we cannot say that it is conclusive—that the defense was entitled to a directed verdict on the thoery that the damage to the Mencer home just could not have been caused by the blasting as a scientific fact. Were we to take such a view, we would be requiring a complainant to prove his case scientifically rather than by the law's old established standard of probable cause. We do not find the testimony of the appellees as to the damage following the blasts as so inherently incredible or contrary to the laws of nature as to justify directing a verdict for River Queen. 53 Am.Jur., Trial, Section 149.

River Queen contends that the appellee Anton Mencer was not qualified to give opinion evidence that River Queen had used explosives in excess of those necessary. Since it was shown that Mencer had used and observed the effects of explosives for nearly thirty-five years, there was no error in admitting this testimony, Brooks-Calloway Company v. Carroll, 235 Ky. 41, 29 S.W.2d 592, and it was competent for other witnesses to testify to damages to or observations made upon other property as far or farther from River Queen's operation. Glens Falls Insurance Company v. Ogden, Ky., 310 S.W.2d 547.

Evidence on behalf of appellees showed that the walls and foundations, as well as plaster, were cracked in the house. A general contractor testified that it would require about $6,000 to repair the damage caused by the blasting. This testimony was competent. Brooks-Calloway Company v.

Carroll, supra. The testimony of Anton Mencer that it would cost $12,000 to reconstruct his house was not proper, but the only unsustained objection to this line of questioning related to his qualifications. Therefore, we must hold that error was waived and was unprejudicial in view of the amount of the verdict and the aforementioned testimony of the contractor.

Appellant contends that Instruction No. 1 was erroneous in that it permitted a maximum recovery of $12,000. This amount was supported solely by the previously mentioned testimony of Anton Mencer and did not relate to the cost of repair. Where a building cannot be reasonably repaired, the measure of damages is the fair market value just before and just after the injury. Hunt-Forbes Construction Company v. Martt, 247 Ky. 376, 57 S.W.2d 37. However, we do not believe the giving of the instruction requires a reversal since the distinction between "reconstruction" and "repair" was never raised before the trial court by objection or by motion for a new trial and since the verdict itself was amply supported by competent evidence of a contractor. Moreover, since there was no evidence of before and after market values, an instruction on this measure of damages would have been improper.

Appellant offered a list of twenty-seven instructions and insists they should have been given. As might be expected these were so worded as to be most favorable to appellant and, essentially, would have required that expert testimony support appellees before they would be entitled to recovery. As has been heretofore indicated, to so weight this expert testimony would have been an improper restriction on the prerogative of the jury.

Going to the contention of impropriety in the closing argument, River Queen specifically objects to seven statements. We need consider only three of these to which objections were interposed.

International Shoe Company v. Dawahare's, Inc., Ky., 255 S.W.2d 981. Of these, two relate to an alleged inference by appellant that its wealth was being emphasized. We do not believe that the same inferences would have been drawn by the jury. The other objection is to the statement that a seismograph "is as cold blooded as that bannister." Reference to a machine in this way is no reflection on the integrity of the parties or the machine. Nor does it seem prejudicial for appellees to further state that the machine was incapable of measuring the physical and mental efforts expended in constructing the house.

As has been shown, the verdict of $5,000 is supported by competent evidence that it would require $6,000 to restore the house. Therefore, there is no merit to the argument that the verdict is excessive and flagrantly against the evidence.

The judgment is affirmed.