## Consolidation Coal Co. v. Ramey et al.

(Decided Dec. 10, 1937.)

EDWARD C. O'REAR and C. F. PACE for appellant.
FRED MEADE for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellees, Sarah Ramey and Dan Ramey, are the owners of a tract of land located on Daniels Creek in Johnson County, Ky. The appellant, Consolidation Coal Company, is the owner of the minerals and mineral rights under said tract of land.

On January 20, 1936, the appellees filed this action in the Johnson circuit court against appellant, seeking to recover damages in the sum of $1,200. In their petition they alleged that the appellant had mined and removed the coal under said land, not leaving sufficient support to maintain the surface in its natural state, and that by reason of said mining, numerous breaks, cracks, and slips were caused on appellees' land, thereby ren-

dering it less valuable for farming and grazing purposes, and further claimed damages for the loss of a spring and well located on their property, alleged to have been caused by the defendant's improper mining operations.

The case coming on for trial, the jury, after hearing the proof and receiving the court's instructions purporting to give the law applicable thereto, found a verdict in favor of the appellees in the sum of $400, upon which judgment was rendered.

Appellant, complaining of this, has moved for an appeal from that judgment, urging as grounds for its reversal that the same was erroneous because: (1) The court erred in refusing to give instructions "b" and "c" offered by it: (2) the verdict of the jury is excessive, in that it was awarded for 1.46 acres of rough mountain land; (3) the appellant's motion for a peremptory instruction asked at the close of appellees' testimony, and renewed at the close of all the testimony, should have been sustained, for the reason that the appellant was not liable for cracks, breaks, or loss of water supply as the result of mining operations under appellees' land, and because the cracks, breaks, and slips were the result, not of appellant's mining operations, but of natural causes, of which appellant had no control; and (4) the evidence relative to loss of and damage to well and spring was incompetent and should not have been allowed to have gone to the jury; and that such evidence should have been excluded from the consideration of the jury.

In view of the conclusion we have reached as to the merit of this appeal presented and argued by the third assignment of error, namely, that appellant's motion for a peremptory instruction should have been granted, for the reason that the complained of cracks and breaks in the land and loss of water supply were not shown by the proof to be the result of the appellant's mining operations, or, that is to say, the same were not caused by or resulted from, as alleged, appellant's having mined and removed coal from under said land without leaving sufficient support to maintain the surface in its natural state, we deem it not necessary to here discuss and decide other of the objections argued and no opinion is expressed as to their merit.

However, as to this third objection, it is our con-

clusion that same is meritorious, in that a careful review of the proceedings and the evidence introduced in support of and against the allegations of plaintiffs' petition discloses no sufficient ground to support their claim of injury done their lands by the appellant, either as alleged or at all, nor any ground from which it might be inferred that the injury to their land was caused as alleged, or, that is to say, the evidence introduced by plaintiffs did not show that the injury complained of was occasioned by reason of any negligent or improper method employed by the appellant company in mining the coal from under their lands or resulted from any improper withdrawing of'the pillar supports therefrom after taking out the coal.

The plaintiffs' evidence, in support of their charge that the breaks and cracks in their land and the drainage of the water from their well and spring located thereon were caused by appellant's negligence in its mining operations, went no further than to show that such cracks and breaks complained of in the surface of their land had occurred and that their well and spring had gone dry after the mining operations were had, from which fact they argued "post hoc propter hoc," that inasmuch as appellant had conducted mining operations beneath this land, upon which breaks and slides had taken place, the same of necessity resulted from or were caused by improper mining methods employed in its coal mining operations beneath their land.

No attempt was made to otherwise connect this cracking and sinking of this 1.5 acres of plaintiffs' land and their well and spring having gone dry with the ordinary working or coal mining operations shown conducted by the appellant, as the owner and vendee of the minerals and coal underlying their land.

Even conceding the admitted fact of appellant's having conducted coal mining operations under this land, by which coal was taken and removed therefrom, and that the surface land above the mine had cracked and broken in places, and that such fact was sufficient to make out a prima facie case, the two having occurred contemporaneously, that the mining operations were the cause thereof, such conclusion, being only a prima facie one, it was subject to rebuttal by proof overcoming it.

Such proof, it clearly appears, was introduced by

appellant upon the hearing of the case. It showed by the testimony of its superintendent, engineers, and others that there had been no sinking or break in the roof of its mine anywhere underlying plaintiffs' land, or dropping of the land in any mined out portion of the mine, from which it necessarily followed that the roof of its mine being intact and showing no breaks therein beneath plaintiffs' land, there could not have been any withdrawal of supports from their superimposed surface land. Further it showed that there were no leaks or wet places in the section or portion of its mine underlying plaintiffs' land and their well and spring located thereon, nor any roof leaks or wet places in its mine at all indicating any lateral or surface drainage within 1,500 feet of the boundary line of plaintiff's land under which it had conducted its mining operations.

While it is further, by way of defense, contended by appellant that even if some causal connection was shown between the breaks and cracks occurring on plaintiffs' land, injuring it, and appellant's mining operations conducted beneath it, any damage caused thereby was one of "damnum absque injuria," which would not become a cause of action because of the provisions of the deed to the mineral and mining rights, executed by one Lewis Butcher to the appellant company, or its mesne grantor, in 1900, he being also the grantor of the surface land to the plaintiffs, which was made subject and subservient to its necessary and convenient mining operations.

Appellant contends that by this deed it was given the right to enter upon said land and "use and operate the same, and the surface thereof, in all and any manner that may be deemed necessary and convenient by the said party of the second part * * * for mining and removing therefrom all the said minerals and products * * *, with the exclusive right to erect thereon, maintain and remove therefrom all such structures as may be deemed necessary or convenient by the said second party (appellant) * * * in the free and full exercise and enjoyment of the rights and privileges herein granted."

However, we do not find it needful to here construe this deed as bearing upon the right of the defendant to claim exemption thereunder from liability for injuries alleged to have been caused the plaintiffs, with respect to their land and well, by its exercise of the rights given it under the terms of the deed, where plaintiffs have, we

conclude, entirely failed to show any injury caused their land by the company's mining operations conducted thereunder or in removing coal therefrom, regardless of whether or not it was properly or improperly removed, or as to whether or not sufficient supporting pillars or timbers were left by the company upon removing the coal from such substrata.

It was incumbent upon plaintiffs, in suing for recovery of damages for injuries alleged to have been caused them by appellant, to produce proof tending to establish the basic fact of their claim, that the injuries complained of were so caused.

Appellant has clearly shown that, so far as its mining operations are concerned, they have had no effect whatever upon the surface land above its mine, for the reason that the unbroken roof of this section of its mine underlying plaintiffs' land shows that the supports have not been withdrawn and that the land remains in its natural state, or that its condition is the same as if no coal had ever been removed therefrom.

Such being our conclusions, the plaintiffs must needs be held to have entirely failed to show that any injury had been caused them, by reason of the breaks and cracks in their land, as the result of defendant's mining operations.

It follows, therefore, that in the absence of any proof showing such necessary casual connection therewith, the plaintiffs have failed to make out any cause of action against appellant and that the court erred in refusing to grant it a peremptory instruction, offered at the conclusion of the evidence, directing the jury to find for defendant.

Wherefore, the appeal is granted and judgment reversed.